IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
AUGUST 22, 2005 Session

## ARTHUR W. ANDERSON, SR., ET AL. V. JAMES W. RAYNER, ET AL.

### Direct Appeal from the Circuit Court for Shelby County
### No. 93283-6 T.D.    George H. Brown, Judge

---

### No. W2004-00485-COA-R3-CV - Filed December 28, 2005

---

This is the second time that this case has been on appeal. In this appeal, we are asked to determine if the trial court erred when it granted summary judgment to the defendants. The defendants assert that summary judgment was appropriate based on the claims and defenses raised at trial, including res judicata, law of the case, and statute of limitations. We affirm.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

Edwin C. Lenow, Memphis, TN, for Appellants

David J. Cocke, John S. Wilson, III, Memphis, TN, for Appellees

### OPINION

### I. FACTS & PROCEDURAL HISTORY

This the second time that this case has been before the Court, and the pertinent factual and procedural history is set out in the Court's opinion, which we quote:

> The Plaintiffs' version of the facts in this case is as follows. In late 1992 and early 1993, Plaintiffs/Appellants Arthur W. Anderson, Sr. and Jerry Hollingsworth ("Anderson," "Hollingsworth" or, collectively, "Plaintiffs"[ or "Appellants"]) conceived of a plan to create a multi-faceted real estate development in Oxford, Mississippi. Plaintiffs approached Defendant Edwin S. Roberson ("Roberson") and Paul Anderson, Arthur Anderson's nephew, in order to raise money for the development project.

Arthur Anderson indicated that he could participate in the project as long as he would not need to sign individually on a large loan. At this early stage, however, Plaintiffs did not anticipate such large loans would be necessary, since they planned on the City of Oxford taking ownership of the golf course, and financing the purchase through Certificate of Participation Bonds. Mr. Roberson apparently approached his immediate supervisor, Defendant John S. Wilson ("Wilson"), and Defendant James Rayner ("Rayner"), for the initial $200,000 seed money needed. Plaintiffs contemplated that they, along with Paul Anderson, would control 60% of the project, while Defendants would control the remaining 40%.

In April, 1993, Defendants informed Plaintiffs that they no longer intended to pursue Oxford City bond financing, but that they believed private financing of both the golf course and the first phase of the residential development to be the best choice for funding the project. Rayner allegedly told Anderson that if Plaintiffs would give Rayner an additional 10% of the project, Plaintiffs would "never have anything else to worry about, the money would be there."

It was at this point that the dealings between the parties began to deteriorate. Anderson agreed to give Rayner the additional 10% interest in the development, and Plaintiffs apparently believed this meant that they would share in the project equally with Defendants. However, shortly thereafter, Paul Anderson dropped out of the project because he was unwilling to sign the large loan required under the private financing scheme. Defendants kept the 10% Anderson had given Rayner, as well as Paul Anderson's 10% share, which Defendants Roberson and Wilson apparently divided between themselves. This left Defendants with a 60% stake in the project and control over the development corporation to be formed.

At approximately the same time Plaintiff Anderson was approached about giving Defendants 10% of his share of the project, Defendant Wilson extended Plaintiff Jerry Hollingsworth a $20,000 loan. Plaintiffs allege that Defendants promised Hollingsworth a $50,000 developer's fee at the closing of the bank loan for the development project. Based upon these representations, Hollingsworth apparently entered into a $40,000 settlement agreement to repay the Bank of Bartlett on a separate matter. Shortly before the loan closed on August 6, 1993, Roberson told Hollingsworth that the $20,000 loan and the entire Bank of Bartlett

obligation would be taken care of if Hollingsworth waived the $50,000 development fee. Hollingsworth agreed.

Defendant Grand Oaks, Inc., ("Grand Oaks" or the "Corporation" [or collectively with Rayner, "Appellees"]) was formed in July of 1993 under Mississippi law, and Defendant Roberson signed the articles of incorporation on August 6, 1993, the same date as the loan closing. The Grand Oaks Shareholders' Agreement, dated July 1, 1993, provided that the Corporation's 1,000 shares of stock be divided: 25%, 20% and 15% to Defendants Rayner, Wilson and Roberson, respectively; and 20% each to Plaintiffs Anderson and Hollingsworth.

Plaintiff Hollingsworth alleges that, in spite of Defendants' agreement to take care of his debt to Bank of Bartlett, Defendants later informed him that the debt was still outstanding. Rather than default on the Bank of Bartlett agreement, Hollingsworth claims Defendants put him in a position of "financial duress" which forced him to enter into a stock pledge agreement, which, Hollingsworth believed, would allow him to sell or borrow against his stock in the new corporation. Hollingsworth claims that, unbeknownst to him, Defendants had added language in the agreement which provided that Hollingsworth's right to sell or borrow against his stock was "subject to the restrictions and by-laws of the corporation." Since the shareholders' agreement provided a sixty (60) day right of first refusal on any sale of company stock, Hollingsworth was effectively prevented from using his stock to raise money.

Plaintiffs also allege they were told that the law firm Defendants had selected to form the new corporation and draft documents associated with the incorporation was acting on behalf of the corporation. They allege that they later found out that the firm in question had contracted with the Defendants, individually, and that the corporate documents reflected an initial stock authorization of 10,000 shares, whereas Plaintiffs and Defendants had initially only agreed to issuing 1,000 shares.

Plaintiffs also claim that Defendants held a secret meeting in Memphis, which Plaintiff Hollingsworth found out about and attended. The meeting was between Defendant Rayner and representatives of the Marriot Corporation ("Marriot"), the entity tapped to manage the hotel property. At the meeting, Defendant Rayner allegedly told Marriot representatives that he had decided to

develop and own the hotel property himself, and that Plaintiffs had no financial interest in the project.

A few days before one of Hollingsworth's notes to Rayner became due, Rayner allegedly informed Hollingsworth that he would not renew the note, and that Hollingsworth would have to pay the note or forfeit his stock in the corporation, pursuant to the stock pledge agreement. In order to avoid the loss of his interest in the Corporation, Hollingsworth found an investor who was willing to let Hollingsworth borrow against his stock. Hollingsworth alleges that Rayner found out about Hollingsworth's plans and contacted the investor to advise him that Hollingsworth was subject to the right of first refusal terms in the shareholders' agreement. Hollingsworth alleges that Rayner then contacted him to advise him that Rayner already had a judgment against Hollingsworth's stock, which was, apparently, untrue. Given no alternative, Hollingsworth claims he was forced to transfer his stock to Rayner on May 6, 1994, giving Defendants an 80% stake in the Grand Oaks, Inc.

Plaintiffs allege that, since May of 1994, Defendants have engaged in such tactics as: attempting to dilute Anderson's remaining stock in the corporation; attempting to privately purchase choice segments of the real estate development; assigning corporate notes to themselves, individually; pulling private consumer credit reports on Plaintiffs; and appointing their friends as "independent directors" pursuant to the Mississippi Independent Directors Statute.

. . . .

Plaintiffs Anderson and Hollingsworth originally filed this action as two separate cases in May of 1994. The two cases were consolidated and set for trial in October of 1997. Before trial, Plaintiffs nonsuited the case, refiling it several months later. Plaintiffs alleged several causes of action: intentional infliction of emotional distress; breach of fiduciary duty; fraud in the inducement; tortious interference with existing and prospective business; and conversion.

On January 20, 1998, Defendant, John S. Wilson, through his executor, filed a Motion for Partial Dismissal on the basis that the cause of action by Plaintiffs against Wilson did not survive his

death.[1] The trial court granted this motion on July 21, 1998. On January 20, 1998, Defendants, Rayner and Grand Oaks, filed a motion to dismiss for lack of in personam jurisdiction, and the trial court granted the motion by order entered May 25, 2000. By order entered June 23, 2000, the trial court denied Plaintiffs' Tenn.R.Civ.P. 59 motion and amended its order of dismissal by making it a final order pursuant to Tenn.R.Civ.P. 54.02.

*Anderson v. Roberson*, No. W2000-01879-COA-R3-CV, 2001 Tenn. App. LEXIS 827, at *1-9 (Tenn. Ct. App. 2001) (footnotes omitted) [hereinafter "*Anderson I*"].

During the time this case was on appeal regarding Rayner's and Grand Oak's motion to dismiss, Roberson and Wilson separately filed motions to dismiss, or in the alternative, for summary judgment on all the remaining claims against them. The circuit court granted both motions for summary judgment. Appellants failed to timely appeal this judgment.

On remand, Rayner and Grand Oaks jointly filed a motion for summary judgment alleging, among other claims and defenses, lack of personal jurisdiction, collateral estoppel, statute of limitations, and law of the case. Rayner and Grand Oaks also filed motions to strike the affidavit of Anderson and to strike portions of the affidavit of Hollingsworth. Subsequently, the circuit court entered an order granting Rayner's and Grand Oaks' motion to strike the affidavit of Anderson, motion to strike portions of the affidavit of Hollingsworth, and motion for summary judgment.

## II.  ISSUES PRESENTED

Appellants have timely filed a notice of appeal and present the following issue for review:

1. Whether the circuit court erred when it granted Defendants' motion for summary judgment.

Appellees have also presented the following issues for review:

2. Whether Appellants have waived their appeal of issues not brought within this appeal;
3. Whether Appellants' claim for damages in connection with the April 7, 1993 transaction are time barred; and
4. Whether Appellants' argument that Rayner failed to respond timely to the requests for admissions propounded require reversal.

For the following reasons, we affirm the decision of the circuit court.

---

[1] The partial dismissal granted to Wilson applied only to any claims related to defamation and punitive damages.

### III. STANDARD OF REVIEW

A court may grant summary judgment "only when the moving party demonstrates that there are no genuine issues of material fact and that he or she is entitled to a judgment as a matter of law." *Penley v. Honda Motor Corp.*, 31 S.W.3d 181, 183 (Tenn. 2000) (citing Tenn. R. Civ. P. 56.03; *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993)). "The moving party has the burden of proving that its motion satisfies these requirements." *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997) (citing *Downen v. Allstate Ins. Co.*, 811 S.W.2d 523, 524 (Tenn. 1991)). When the party seeking summary judgment makes a properly supported motion, the burden then shifts to the nonmoving party to set forth specific facts . . . establishing that there are indeed disputed, material facts creating a genuine issue that needs to be resolved by the trier of fact . . . ." *Byrd*, 847 S.W.2d at 215.

"On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Calabro*, 15 S.W.3d at 875 (citing *Bain*, 936 S.W.2d at 622). "Then, if there is a dispute as to any material fact or any doubt as to the conclusions to be drawn from that fact, the motion must be denied." *Byrd*, 847 S.W.2d at 211 (citing *Poore v. Magnavox Co.*, 666 S.W.2d 48, 49 (Tenn. 1987); *Dooley v. Everett*, 805 S.W.2d 380, 383 (Tenn. Ct. App. 1990)). Appellate courts review a trial court's grant of summary judgment *de novo* with no presumption of correctness. *Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997) (citing *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995)).

### IV. DISCUSSION

On appeal, Appellants assert that the circuit court erred when it granted Defendants' summary judgment motion on the grounds of statute of limitations, res judicata, and law of the case.

This Court found in *Anderson I* that Tennessee courts could not exercise personal jurisdiction under a traditional theory over Appellees for their actions arising out of this dispute. *Anderson I*, 2001 Tenn. App. LEXIS 827, at *17-18. However, we did find that Appellees may be subject to the jurisdiction of a Tennessee court in this case under the conspiracy theory of jurisdiction. *Id.* at *20. We noted that, after an evidentiary hearing, the circuit court could determine that there were "no facts [to] sustain the allegation that a conspiracy exists." *Id.* While Appellants appealed the order granting Rayner's and Grand Oaks' motion to dismiss, the circuit court granted summary judgment to Roberson and Wilson, finding no conspiracy as a matter of law to exist between them and Rayner and Grand Oaks. Appellants failed to timely appeal the order granting summary judgment to Roberson and Wilson. Appellees have asserted that the circuit court's decision granting summary judgment to Roberson and Wilson is res judicata as to the issue of conspiracy with regards to Appellees and that, pursuant to *Anderson I*, the circuit court was proper in granting summary judgment because it lacked personal jurisdiction over Appellees. Thus, our analysis hinges on whether the doctrines of res judicata and collateral estoppel bar Appellants from litigating the issue of conspiracy against Appellees.

As our supreme court has noted,

> The doctrine of collateral estoppel or estoppel by judgment is an extension of the principle of res judicata, and is generally held to be applicable only when it affirmatively appears that the issue involved in the case under consideration has already been litigated in a prior suit between the same parties, even though based upon a different cause of action, if the determination of such issue in the former action was necessary to the judgment . . . .
>
> Res judicata bars a second suit between the same parties and their privies on the same cause of action as to all issues which were or could have been litigated in the former suit. Collateral estoppel operates to bar a second suit between the same parties and their privies on a different cause of action only as to issues which were actually litigated and determined in the former suit.

*Massengill v. Scott*, 738 S.W.2d 629, 631-32 (Tenn. 1987) (citations omitted). "In order for res judicata to apply, however, the prior judgment must conclude the rights of the parties on the merits." *Goeke v. Woods*, 777 S.W.2d 347, 349 (Tenn. 1989) (citing *A. L. Kornman Co. v. Metro. Gov't of Nashville and Davidson County*, 391 S.W.2d 633, 636 (1965)). "One defending on the basis of res judicata or collateral estoppel must demonstrate that 1) the judgment in the prior case was final and concluded the rights of the party against whom the defense is asserted, and 2) both cases involve the same parties, the same cause of action, or identical issues." *Richardson v. Tenn. Bd. of Dentistry*, 913 S.W.2d 446, 459 (Tenn. 1995) (citing *Scales v. Scales*, 564 S.W.2d 667, 670 (Tenn. Ct. App. 1977)).

When the circuit court granted Roberson's and Wilson's motions for summary judgment, it necessarily found as a matter of law that there was no conspiracy between Roberson, Wilson, and Appellees. In addition to granting summary judgment, the circuit court entered a final judgment in its order in favor of Wilson and Roberson. This decision was not timely appealed. Thus, this final judgment concluded the rights on the merits between Appellants, Roberson, and Wilson. *See Byrd*, 847 S.W.2d at 210 (stating that "a motion for summary judgment goes directly to the merits of the litigation"). Further, Appellants have asserted the same issues and cause of action against Appellees. Thus, doctrines of res judicata and collateral estoppel will bar Appellants from litigating whether a conspiracy existed between Appeellees, Roberson, and Wilson against Appellees if Appellees were in privity with Roberson and Wilson.

"[A]lleged co-conspirators are 'in privity' with one another for res judicata purposes." *Discon Inc. v. Nynex Corp.*, 86 F. Supp. 2d 154, 166 (W.D.N.Y. 2000) (citations omitted); *McIver v. Jones*, 434 S.E.2d 504, 506 (Ga. Ct. App. 1993); *see In re Teletronics*, 762 F,.2d 185, 192 (2d Cir. 1984) (concluding that alleged co-conspirator was entitled to res judicata effect of an earlier decision for another co-conspirator); *Press Publ'g v. Matol Botanical Int'l, Ltd.*, 37 P.3d 1121,

1128 (Utah 2001) (stating that "final adjudication of plaintiff's claims bars subsequent litigation concerning the same subject matter against officers or owners of a closely held corporation, partners, co-conspirators, agents, alter egos or other parties with similar legal interests").

Thus, the doctrines of res judicata and collateral estoppel bar Appellants from litigating whether Roberson, Wilson, and Appellees engaged in a conspiracy against Appellants in this case. Appellees, as a matter of law, have not engaged in a conspiracy with Roberson and Wilson. As this court stated in *Anderson I*, Tennessee courts do not have personal jurisdiction against Appellees if no conspiracy exists. *Anderson I*, 2001 Tenn. App. LEXIS 827, at *19. Under the law of the case, Tennessee courts do not have personal jurisdiction over Appellees. *Memphis Publ'g Co. v. Tenn. Petroleum Underground Storage Tank Bd.*, 975 S.W.2d 303, 306 (Tenn. 1998) (stating that "under the law of the case doctrine, an appellate court's decision on an issue of law is binding in later trials and appeals of the same case if the facts on the second trial or appeal are substantially the same as the facts in the first trial or appeal" (citations omitted)). Accordingly, the decision of the circuit court is affirmed. Thus, all other issues in this case are pretermitted.

## V.  CONCLUSION

For the foregoing reasons, we affirm the decision of the circuit court. Costs of this appeal are taxed to Appellants, Arthur W. Anderson, Sr. and Jerry Hollingsworth, and their surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE

-8-